COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DONALD TURNER,                                            )

                                                                              )             
No.  08-04-00148-CR

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )              
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20030D03096)

 

 

O
P I N I O N

 

Donald Turner
appeals his conviction for two counts of indecency with a child.  A jury found him guilty and the trial court
assessed punishment at life imprisonment. 
Appellant=s two
issues challenge the legal and factual sufficiency of the evidence and he
contends the trial court erred in allowing the State to present extraneous
offense evidence to the jury during the guilt/innocence phase of the
trial.  We affirm.

Appellant met the
alleged victim, J.S. through her adoptive father.  J.S. and her adoptive father, Roy Snyder,
have lived in El Paso since moving from Florida in 1996.  At the time of trial, Mr. Snyder was an
ordained minister and chief executor of a Baptist missionary unit and his
adoptive daughter J.S. was thirteen years old. 
J.S. lived with Mr. Snyder along with his son, Roy II, and an
aide/driver named Gregory Ward.  Mr.
Snyder was disabled as a result of cancer and at the time of trial required
dialysis as a result of kidney failure and was awaiting a transplant.








J.S. is mentally
disabled as a result of brain damage suffered during childbirth and functions
at approximately a seven-year-old level. 
Her disabilities include slow learning, motor skills, and coordination
as well as AADD.@ 
Even though she is mentally disabled, she has full verbal communication
abilities and is able to communicate at the level of a child twelve to thirteen
years old.

Appellant and J.S.=s father met while both were residing
at the Warren Inn in El Paso approximately three to four years prior to
trial.  The two became Avery good friends.@ 
Eventually, Mr. Snyder trusted Appellant enough to turn over his credit
cards, finances, and banking to him. 
Because of Mr. Snyder=s
health, Appellant would do things for him like shopping and picking up mail.

Even after Mr.
Snyder and J.S. had moved from the Warren Inn, the relationship between Mr.
Snyder and Appellant continued to grow. 
At some point during the relationship, Appellant began coming over to
J.S.=s home on
a regular basis to help her father Aput
a computer together@ as well
as Ahook it up.@  On four separate occasions during February
and March of 2003, Mr. Snyder observed behavior between J.S. and Appellant
that caught his attention.

After an alleged
incident at the Veteran=s
Administration in El Paso, Mr. Snyder Afelt
it was time to alert the authorities.@  Also after the final incident, Mr. Snyder
confronted Appellant based on conversations that he had with his daughter
concerning these four incidents and informed him not to return to his home.








Whenever his
health was failing, Mr. Snyder would send J.S. to the Child Crisis Center in El
Paso.  The Child Crisis Center would
provide 24-hour care at no cost. 
Sometime during March of 2003, J.S. was sent to the Child Crisis Center
because her father was in the hospital. 
During the same month, J.S. was taken to Dr. John Guggedahl for an
examination.

Dr. Guggedahl had
been J.S.=s
pediatrician since sometime in 2001. 
While at the Crisis Center, J.S. complained that her breasts hurt.  When asked why, J.S. told a caseworker that Aa man had touched them.@ 
The caseworker, Ms. Margarita Avalos, notified Child Protective
Services.  A caseworker from the Child
Crisis Center brought J.S. to Dr. Guggedahl=s
office as a result of her statements for an examination to determine possible
sexual abuse.  Dr. Guggedahl asked J.S.
about the incident and she told him that Aa
friend of the family . . . [who] was in the house to fix the computer@ had touched both her breasts and her
vagina.

In Issue One,
Appellant challenges the legal and factual sufficiency of the 

evidence to support the jury=s finding that he committed the offense
of indecency with a child.  More
specifically, he challenges the evidence supporting the jury=s findings that:  (1) he was the individual who engaged in
sexual contact with J.S.; (2) the touching occurred in El Paso; and (3) he had
the specific intent to arouse or gratify his sexual desire.

Standards
of Review

In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Hernandez
v. State, 946 S.W.2d 108, 110-11 (Tex.App.--El Paso 1997, no pet.).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witness, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  








Instead, our duty
is to determine whether if both the explicit and implicit findings of the trier
of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  See
Adelman, 828 S.W.2d at 421-22.  In so
doing, any inconsistencies in the evidence are resolved in favor of the
verdict.  Matson, 819 S.W.2d at
843.

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004).  Evidence can be factually insufficient if the
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  Our evaluation should not intrude upon the
fact finder=s role as
the sole judge of the weight and credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).  

We will not set
aside the judgment unless the evidence supporting the verdict is so weak as to
be clearly wrong and manifestly unjust.  Zuniga,
144 S.W.3d at 481.  A clearly wrong and
manifestly unjust verdict occurs where the jury=s
finding Ashocks
the conscience@ or Aclearly demonstrates bias.@ 
Id.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the Appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Indecency
With a Child

A person commits
the offense of indecency with a child if he engages in sexual contact 








with a child younger than 17 years= old. 
See Tex.Pen.Code Ann.
' 21.11(a)(1)(Vernon 2003).  ASexual
contact@ is
defined to include any touching of the breast or any part of the genitals of a
person with intent to arouse or gratify the sexual desire of any person.  See Tex.Pen.Code
Ann. '
21.01(2)(Vernon Supp. 2005).

Identity

The gist of
Appellant=s
argument is that the evidence presented at trial failed to show that he was the
person who had inappropriately touched J.S. 
The identity of a perpetrator may be proven by either direct or
circumstantial evidence.  See Couchman
v. State, 3 S.W.3d 155, 162 (Tex.App.--Fort Worth 1999, pet. ref=d), citing Earls v. State, 707
S.W.2d 82, 85 (Tex.Crim.App. 1986).

In Couchman,
a defendant charged with indecency with a child challenged the out‑of‑court
statements made by the child victim as legally insufficient on the issue of
identity. Couchman, 3 S.W.3d at 162. 
He claimed that he was not the same ATony@ identified in the out‑of‑court
statements made by the child and that the child never identified him as the
perpetrator in court.  Id.  The court found the evidence sufficient based
on:  (1) the child=s
testimony that ATony@ had touched her in an area where it Awas not okay to touch;@ (2) a relative=s
testimony that ATony@ was the only person the child knew
with that name; and (3) an in‑court identification of ATony@
by that relative.  Id. at 162‑63.








Here, viewing the
evidence in the light most favorable to the verdict, the evidence shows that
J.S. was brought to the office of Dr. Guggedahl after she complained to one of
the caseworkers at the Child Crisis Center that her breasts hurt because a man
had touched them.  During his
examination, Dr. Guggedahl asked J.S. who had touched her.  J.S. told Dr Guggedahl that Ahe was a friend of the family and that
he was in the house to fix the computer.@  J.S.=s
father, Mr. Snyder, positively identified Appellant in-court.  He further testified that Appellant began to
regularly come over to his house approximately an hour before J.S. arrived home
from school to help Ahook
up the computer.@  He also indicated that J.S. knew him as a
family friend.  Finally, Mr. Snyder
stated that Appellant was Athe
one that fondled her, took her to the car, was playing with her at the VA.@ 
We conclude that a rational finder of fact could have found Appellant to
be the individual identified by J.S. beyond a reasonable doubt.

In his factual
insufficiency complaint, Appellant argues that the evidence shows that another
man, Gregory Ward, who lived in the same household, might have been the
individual J.S. was referring to in her statement to Dr. Guggedahl.  Appellant first directs our attention to the
fact that Mr. Snyder referred to Gregory Ward as a APredator.@ 
Mr. Snyder explained that his reference to Mr. Ward as a predator arose
from an Aex-wife
situation@ which
was found to be invalid.  Mr. Snyder did
admit that there were some Aaccusations@ against Mr. Ward arising from his relationship
with his own daughter but the State objected and the trial court sustained the
objection so there was no further evidence of what those accusations were.  However, Mr. Snyder also testified that he
had investigated Mr. Ward=s
background with both the police department and the Army.








Appellant next
directs our attention to an incident involving Mr. Ward and J.S.  On one occasion, Mr. Snyder found Mr. Ward on
his knees in front of J.S. as she was sitting on the couch watching
television.  The main light in the living
room was off.  Mr. Snyder later asked Mr.
Ward about the incident and he stated that he had only Agone
to pick something up.@  Mr. Snyder did state that the situation Adidn=t
look good.@  However, Mr. Snyder also indicated that Mr.
Ward had his own living quarters which were separate and he was never allowed
to be alone with J.S.  Further, Mr.
Snyder stated that Mr. Ward never escorted J.S. anywhere at any time.

Appellant also
points to the testimony of Mr. Snyder wherein he admitted that Mr. Ward Atried to fix the computer,@ represented that he was a computer
programmer, and Aplays
around with computers.@  Mr. Snyder also made the statement that A>plays= is right.  He=s
been trying to send his girlfriend an e-mail for three weeks and doesn=t know how to do it.@

Despite any
inconsistencies arising from the testimony of Mr. Snyder, the jury was free to
resolve any conflicts.  See Mosley
v. State, 983 S.W.2d 249, 254 (Tex.Crim.App. 1998)(en banc) (holding that
questions concerning the credibility of witnesses and the weight to be given
their testimony are to be resolved by the trier of fact); see also Esquivel
v. State, 506 S.W.2d 613, 615 (Tex.Crim.App. 1974).  Further, evidence is not rendered
insufficient when conflicting evidence is introduced.  Matchett v. State, 941 S.W.2d 922, 936
(Tex.Crim.App. 1996).  After a neutral
review of all of the evidence, we conclude that the evidence is not too weak to
support the finding beyond a reasonable doubt nor so contrary to the finding as
to be clearly wrong and unjust.

Venue








Appellant also
challenges the sufficiency of the evidence to establish that the offense
occurred in El Paso County.  We presume
that venue was established in the trial court unless the record affirmatively
shows otherwise or unless venue is made an issue at trial.  Valdez v. State, 993 S.W.2d 346, 349
(Tex.App.--El Paso 1999, pet. ref=d).  Because venue is not a Acriminative fact@
and thus not a constituent element of the offense, it need not be proved beyond
a reasonable doubt, but rather, by a preponderance of the evidence.  Valdez, 993 S.W.2d at 349.  Proof of venue may be established by direct
or circumstantial evidence.  Id.
at 349.  Finally, as the trier of fact on
the issue of venue, the trial court may make reasonable inferences from the
evidence.  See Lozano v. State,
958 S.W.2d 925, 929 (Tex.App.‑‑El Paso 1997, no pet.).  Appellant argues that since Dr. Guggedahl did
not testify that J.S. told him where the touching occurred nor that it occurred
in El Paso County, the State failed to prove that the touching occurred in El
Paso.  We must disagree.

Mr. Snyder
testified to four specific, separate incidents of Appellant=s behavior which Acaught his attention@ during the time period between
February and March, 2003.  He also
testified that each of these incidents occurred in El Paso County.  Mr. Snyder testified that he confronted
Appellant based on his conversations with J.S. after he Afollowed
him outside to our driveway@
and Atold him
. . . not to come back to my home.@

Mr. Snyder also
testified specifically to one incident involving Appellant and J.S. which
occurred at the Veterans Administration which was located in El Paso.  He stated that after talking to J.S. about
the incident he Afelt it
was time to alert the authorities to a problem.@  He also stated that A[Appellant=s] the one that fondled her, took her
to the car, was playing with her at the VA.@

During the
relevant time period, Mr. Snyder testified that he had suffered a stroke and
also suffered from congestive heart failure. 
He also stated that he was disabled as a result of cancer and was
undergoing dialysis treatment for kidney failure.  Mr. Snyder stated that on March 7, 2003, he
had to be hospitalized as a result of his heart condition.  Officers were dispatched to his home to
transport J.S. to the Child Crisis Center. 









Margarita Avalos,
who worked at the El Paso Child Crisis Center during the relevant time period,
testified that J.S. was Aone
of our regular children@
because Aher
father was mostly -- in the hospital most of the time.@  She testified that J.S.=s longest visit lasted approximately
thirty days and it was when Mr. Snyder was in the hospital.  She also testified that J.S. would be at the
Crisis Center approximately six to seven times a month and was Aone of our regular children there.@ 
Ms. Avalos then testified that J.S. was at the Crisis Center when she
made the outcry.

The testimony of
Mr. Snyder and Ms. Avalos alone constitute legally and factually sufficient
evidence to prove that El Paso was the venue of the offense.  Additionally, the severe and continuous
nature of Mr. Snyder=s
health problems make it even more likely that during the time period these
events allegedly occurred, J.S. was present in El Paso County.  Consequently, we overrule the legal and
factual sufficiency challenge that the State failed to prove the touching occurred
in El Paso County, Texas.

Intent
to Arouse or Gratify Sexual Desire

Appellant next
challenges both the legal and factual sufficiency of the evidence supporting
the finding that he possessed the specific intent to arouse or gratify his
sexual desire.  The requisite specific
intent can be inferred from the defendant=s
conduct, his remarks, and all the surrounding circumstances.  See Manrique v. State, 994 S.W.2d 640,
649 (Tex.Crim.App. 1999); Wallace v. State, 52 S.W.3d 231, 234‑35
(Tex.App.-‑El Paso 2001, no pet.). 
An oral expression of intent is not required, and a defendant=s conduct alone is sufficient to infer
intent. Tyler v. State, 950 S.W.2d 787, 789 (Tex.App.-‑Fort Worth
1997, no pet.). 








Here, viewing the
evidence in the light most favorable to the verdict, the evidence shows that on
four separate occasions, Mr. Snyder, the father of J.S., personally observed
behavior by Appellant that Acaught
his attention.@  The first incident occurred in the home of
J.S.  Mr. Snyder testified that one day
after J.S. returned from school, Appellant went into his daughter=s bedroom and shut the door.  He testified that he was in the living room
and when he heard the door click, he proceeded to J.S.=s
bedroom.  He stated that when he opened
the door, Appellant was standing beside J.S. 
After the incident, Mr. Snyder spoke with his daughter and the
conversation made him feel Aangry@ at Appellant.

The second
incident also occurred in the home of J.S. 
Appellant was sitting at one end of the table and Mr. Snyder was at the
other end.  Mr. Snyder testified that
when he looked up from his paperwork, Appellant was gone.  On that day, Appellant went into the bathroom
with J.S.  Mr. Snyder testified that J.S.
looked Avery
embarrassed@ when he
saw her coming out of the bathroom that day. 
He stated that after talking to his daughter about the incident, he felt
Aoutraged beyond belief@ and was Aangry@ and that A[he]
could have shot him if I had a gun.@








On the third
occasion, J.S. had returned from school and was sitting on the couch reading a
book.  Mr. Snyder left the room to turn
on a VCR located in J.S.=s
room.  When he returned, Appellant was
standing next to J.S. with his legs touching the couch.  As he returned to the room, he saw Appellant Aflip the top of his pants up.@ 
Mr. Snyder asked J.S. about the incident and after the conversation he Abec[a]me so angry I wanted to drive my
truck through his house.@        The
final incident occurred at the Veterans Administration in El Paso.  Appellant offered to drive Mr. Snyder to his
doctor and J.S. went as well.  While in
the lounge area of the doctor=s
office, J.S. asked for a drink. 
Appellant offered to accompany J.S. from the fourth floor to the third
floor where the drink machines were located. 
Mr. Snyder testified that it should have taken no longer than fifteen
minutes, but Appellant and J.S. were gone for over a half an hour.  After having a conversation with J.S. about
the incident, Mr. Snyder felt it was time to Aalert
the authorities to a problem.@  He also confronted Appellant based on his
conversations with his daughter and asked him not to return to his home.

Finally, J.S. told
Dr. Guggedahl that Aa friend
of the family . . . in the house to fix the computer@
had touched her on her breasts and in her vaginal area.  Her father, Mr. Snyder, testified that
Appellant was the individual who had come over to his house to Aput a computer together, hook it up.@ 
We conclude that a rational finder of fact could have found Appellant
possessed the requisite intent beyond a reasonable doubt.

In his factual
insufficiency complaint, Appellant agues that these four incidents provide no
evidence, or insufficient evidence, from which a jury could infer that
Appellant had the specific intent to arouse or gratify his sexual desire.  Appellant directs our attention to the
testimony of Mr. Snyder wherein he admitted that after these four incidents he
did not have enough evidence to contact the authorities.  After a neutral review of all of the evidence
on the issue of intent, we conclude that the evidence supporting a finding of
intent is not too weak to support the finding beyond a reasonable doubt nor so
contrary to the finding as to be clearly wrong and unjust.  We conclude the evidence was both legally and
factually sufficient as to each element of the offense.  Issue One is overruled.








In Issue Two,
Appellant argues that the trial court erred in allowing the State to present
extraneous offense evidence to the jury during the guilt/innocence phase of the
trial.  Evidence of other crimes or bad
acts that a defendant might have committed may not be introduced at the
guilt/innocence phase to show that the defendant acted in conformity with his
criminal nature and therefore committed the crime for which he is on
trial.  Lockhart v. State, 847
S.W.2d 568, 570 (Tex.Crim.App. 1992), cert. denied, 510 U.S. 849, 114
S.Ct. 146, 126 L.Ed.2d 108 (1993).  To
constitute an extraneous offense, the evidence must show a crime or bad act,
and that the defendant was connected to it. 
Lockhart, 847 S.W.2d at 573. 
If the evidence fails to show that an offense was committed or that the
accused was connected to the offense, then it is not evidence of an
unadjudicated extraneous offense.  Laca
v. State, 893 S.W.2d 171, 186 (Tex.App.-‑El Paso 1995, pet. ref=d).

In Laca,
this Court found that evidence of appellant being in detention did not
constitute unadjudicated extraneous offense evidence because it failed to show
what, if any, offense had been committed. 
The testimony admitted by the prosecutor in this case similarly does not
constitute extraneous offense evidence. 
This testimony was from Claudia Portillo, Appellant=s parole officer.  The substance of the testimony is as follows:

Q:        How long have you known the Defendant?

 

A:         Two years.

 

Q:        Are you aware of any restrictions
involving the Defendant with regards to being in the company of children under
age 17?

 

A:         Yes

 

Q:        What is that restriction?

 

A:         To absolutely have no contact with
children 17 years of age or younger.

 

Q:        What about with their parents?

 

A:         No contact.

 

Q:        Was the Defendant aware of this
restriction in February of 2003?

 

A:         Yes.

 

Q:        Was the Defendant aware of this
restriction in March of 2003?

 

A:         Yes

 








This testimony fails to show what
crime, if any, had been committed. 
Therefore, this brief testimony, without more, does not constitute
extraneous offense evidence.

At trial,
Appellant also objected to the testimony because the probative value of
Ms. Portillo=s
testimony was substantially outweighed by its prejudicial effect under Tex.R.Evid. 403.  The trial court performed a Montgomery
balancing test and found that the probative value of the testimony of Ms.
Portillo outweighed its prejudicial effect as long as it was limited to certain
questions.  In reviewing the trial court=s balancing test determination, a
reviewing court is to reverse the trial court=s
judgment Ararely
and only after a clear abuse of discretion.@  Mozon v. State, 991 S.W.2d 841, 847
(Tex.Crim.App. 1999), quoting Montgomery v. State, 810 S.W.2d 372, 389
(Tex.Crim.App. 1990).

Factors used in
balancing the prejudicial and probative value of an extraneous offense under
Rule 403 are:  (1) how compellingly the
extraneous offense evidence serves to make more or less probable a fact of
consequence -- a factor which is related to the strength of the evidence presented
by the proponent to show the defendant in fact committed the extraneous
offense; (2) the potential the other offense evidence has to impress the juryA>in
some irrational but nevertheless indelible way;=@ (3) the time the proponent will need
to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and (4) the force of the proponent=s need for this evidence to prove a
fact of consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.  Mozon, 991 S.W.2d
at 847; Montgomery, 810 S.W.2d at 389‑90.








The testimony of
Ms. Portillo was highly probative of Appellant=s
intent.  The testimony indicated that
Appellant knew that contact with a child was prohibited.  Therefore, it was relevant to show that the
questionable behavior of Appellant around J.S. did not have an alternative
explanation.  Appellant specifically made
this an issue at trial.  For example,
counsel for Appellant questioned Mr. Snyder as to whether Appellant could have
entered J.S.=s room
after hearing her call out.  As to the
second factor, while the testimony of Ms. Portillo had the potential to impress
the jury, it was not so prejudicial as to affect the jury to act in an
irrational manner or to make the jury find Appellant guilty on an improper
basis.  The limited testimony included
only evidence that a restriction existed. 
Lacking from the testimony was any evidence of any specific conduct by
Appellant.  With regard to the third
factor, the State spent a very limited amount of time developing the
testimony.  The substance of the
testimony was presented in approximately six short questions.  Lastly, we agree with Appellant that the
State did not need the additional evidence in light of the testimony that J.S.
had been touched inappropriately.  In
this instance, the act alone was sufficient to infer intent.  See Tyler, 950 S.W.2d at 789.  However, in light of all of the factors, we
find that the trial court did not abuse its discretion in concluding that the
probative value of this extraneous offense evidence was not substantially
outweighed by any prejudicial effect.  We
overrule Issue Two.

The judgment of
the trial court is affirmed.

 

February
2, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)